## STATE v. ETHEL WORMACK.[1]

### November 4, 1921.

### No. 22,476.

**Homicide — charge to jury — conviction sustained by evidence.**
1. The evidence justified an instruction submitting murder in the first degree to the jury, and the record warrants a conviction of murder in that degree.

**Assignment of error unfounded.**
2. Nothing in the trial furnishes a basis for an assignment of error on the ground of race prejudice.

Defendant was indicted by the grand jury of Ramsey county charged with murder in the first degree, tried in the district court for that

[1]Reported in 184 N. W. 970.

county before Brill, J., and a jury, and found guilty as charged in the indictment. From the judgment sentencing her to confinement at hard labor in the state reformatory for women at Shakopee for the term of her natural life, defendant appealed. Affirmed.

*J. Louis Ervin,* for appellant.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Assistant Attorney General, *Richard D. O'Brien,* County Attorney, and *Christopher D. O'Brien, Jr.,* Assistant County Attorney, for respondent.

HOLT, J.

Defendant was convicted of murder in the first degree, and sentenced accordingly. She appeals.

There was no motion for a new trial, and in the trial no exception to any ruling or instruction of the court was taken. Hence the appeal narrows down to the proposition whether the evidence sustains the verdict of first degree murder. If it does, the court was also right in instructing the jury as to the elements constituting that degree of crime.

The circumstances attending the killing of Edna Kelsey, as shown by the state's witnesses were these: On the morning of September 20, 1920, defendant and her husband were in attendance at the municipal court in St. Paul. Edna Kelsey and one Barnett, with whom Edna was then cohabiting, were also in court. Defendant invited Edna and Mr. Barnett to her home, situate in an alley in State street, West St. Paul. The party arrived there shortly after 11 o'clock in the forenoon and spent some time in playing cards. At about 1:30 Barnett left. One Clarence Johnson, who stayed at another house in the alley, joined the party. Defendant's husband procured lemon extract and root beer for the guests. The stuff was potent, for both Johnson and Edna became somewhat drunk. Shortly before 4 o'clock Edna and defendant's husband had a boisterous quarrel that attracted the attention of the neighbors in the alley. Edna was seen and heard coming away from defendant's home. She entered one of the neighboring houses in the alley. But after a few minutes stay she returned towards defendant's house, and renewed the dispute with defendant. One witness says she dared defendant to come out and fight with her. According to the testimony

of the state's witnesses, she did not attempt to enter defendant's home, but stood a few feet outside the screen door. As she so stood, defendant approached this door from the inside, pushed it open with one hand, and fired a revolver three times at Edna, who started off toward State street, but fell as she reached the street. One bullet passed through Edna's lower jaw, lodged near the spinal column, and caused death within a few hours. It also appears that one bullet passed through defendant's hand. Directly after the shooting defendant stated to one of the witnesses: "I shot her, but I shot myself like a damn fool," and that a few moments thereafter she walked over to where Edna was lying on the ground, caught hold of and pulled at her clothes, saying: "Get up, bully." The state's case leaves it clear that no assault was made upon defendant by Edna. The nearest to it was the invitation to come out and fight. She made no move to open the screen door, and was standing several feet from it, when defendant began to shoot from the inside.

The question is whether there was room for finding a premeditated design to effect death. The jury could find from the evidence recited an intentional killing, and this justifies a verdict of guilty of murder in the first degree. State v. Lentz, 45 Minn. 177, 47 N. W. 720. As said in State v. Brown, 41 Minn, 319, 323, 43 N. W. 69, of first degree murder: "The offense may be found to be of this grade from the mere fact and circumstances of the killing; and where there are no circumstances to prevent or rebut the presumption, the law will presume that the unlawful act was intentional and malicious, and was prompted and determined on by the ordinary and natural operations of the mind. State v. Lautenschlager, 22 Minn. 514, 526. The law will not, therefore, attempt to lay down a more specific rule. It cannot define the length of time within which the determination to murder or commit the unlawful act resulting in death must be formed." The evidence justified the verdict and judgment rendered.

There is an attempt to assign error on the ground that the prosecuting attorney raised the race issue. It appears that Edna Kelsey was a colored woman, as were also all the persons at the party and the eye-witnesses of what occurred in connection with the shooting, except de-

fendant. For some reason, not apparent to us, the prosecuting attorney asked several witnesses whether defendant was generally considered white or colored. No exception was taken to the inquiry by the very able attorney who represented defendant in the trial. And we fail to see any prejudice to defendant, even if an exception had been saved. The trial was undoubtedly had in a well lighted court-room, where the jury could very readily determine whether the complexion of defendant was such that she could be considered of the white race. The husband of defendant was one of the party; he was seen at the house a few minutes prior to the shooting; he was there immediately after. It cannot be considered as prejudicial that, he being present at the trial, the prosecuting attorney requested him to stand up so that he could be identified by a witness as one of the persons present during the afternoon of the murder. No objection whatever to his doing so was made.

Had defendant's account of the occurrence been accepted by the jury, the verdict should have been not guilty, as the learned trial court specifically instructed, but, evidently, the testimony of the state's witnesses, neighbors and acquaintances of defendant, impressed the jury as being the truthful and reliable version of the circumstances under which Edna Kelsey met her death at the hands of defendant.

The judgment must be and it is affirmed.